UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THADDEUS CHAYLON
MARTIN,

              Plaintiff,

v.

                              Case No. 3:19-cv-474-MMH-PDB

OFFICER HORNE and
OFFICER MOBLEY,[1]

              Defendants.

_____

## ORDER

### I. Status

Plaintiff Thaddeus Chaylon Martin, an inmate of the Florida penal system, initiated this action on March 6, 2018, by filing a pro se Civil Rights Complaint (Doc. 1). He filed an Amended Complaint (Doc. 11) on June 14, 2018, and a Second Amended Complaint (SAC; Doc. 24) on November 13, 2018.[2] In the SAC, Martin asserts claims pursuant to 42 U.S.C. § 1983 against Corrections Officers Horne and Mobley. He alleges that Defendants violated his Eighth Amendment right when they used excessive force against him on

---

[1] The Court directs the Clerk to change the docket to reflect the correct spelling of Defendant Horne's surname.

[2] In referencing documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

August 29, 2016, at Hamilton Correctional Institution Annex (HCIA). As relief, he requests compensatory and punitive damages as well as injunctive and declaratory relief.

This matter is before the Court on Defendants' Motion for Summary Judgment (Motion; Doc. 120). They submitted exhibits in support of the Motion. See Docs. 120-1 through 120-8; S-132. The Court advised Martin of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. See Order (Doc. 46); Summary Judgment Notice (Doc. 121). Martin filed a response in opposition to the Motion. See Response (Doc. 134). He also filed a Motion for Summary Judgment (P. Motion; Doc. 122), a Brief (Doc. 123), a Statement of Undisputed Facts (Doc. 124), a Declaration (P. Decl.; Doc. 125), and a Notice of Exhibits (Doc. 136). Defendants filed a response in opposition to Martin's Motion. See Response (Doc. 131). The Motions are ripe for review.

## II. Plaintiff's Allegations[3]

In his verified SAC,[4] Martin asserts that Defendants Horne and Mobley violated his Eighth Amendment right when they used excessive force against him on August 29, 2016, in HCIA's H dormitory. See SAC at 5. He states that inmates warned him that "the officers were setting [him] up to be hurt" by assigning him to a cell with a disciplinary confinement (DC) inmate that he describes as a troublemaker and homosexual infected with the human immunodeficiency virus (HIV). Id. He maintains that he and the DC inmate would not have been compatible cellmates because Martin's DC time had expired. See id. Martin avers that he "politely declined" the housing assignment and asked to speak to a supervisor. Id. He also alleges that he was not a threat to anyone and was in leg shackles and holding his property bag with his hands cuffed behind his back. See id. He maintains that he was "physically choked, manhandled, and force[d] into [the] cell," and Horne unnecessarily sprayed him with chemical agents. Id. Additionally, Martin

---

[3] The recited facts are drawn from the verified SAC.

[4] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

asserts that Horne and Mobley threw him on the ground where Horne sprayed him again in his eyes, ears, nose, and mouth. See id. at 5-6. According to Martin, he begged Horne to stop spraying because he has asthma and seizures and could not breathe. See id. at 6. Martin describes his injuries as a dislocated shoulder, a reinjured knee, a nosebleed lasting weeks, neck and collarbone wounds, and permanent nerve damage to his arm. See id. at 5-6.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[5] An

---

[5] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing

issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d

---

development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Guevara v. NCL (Bahamas) Ltd.</u>, 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted). Notably, the instant action is before the Court on cross-motions seeking summary judgment. "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." <u>T-Mobile S. LLC v. City of Jacksonville, Fla.</u>, 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008). Instead, applying the same principles, "the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." <u>Id.</u>

## IV. Summary of the Arguments

In the Motion, Defendants maintain that there are no genuine issues of material fact, and therefore, the Court should grant summary judgment in their favor as to Martin's Eighth Amendment claims against them. See Motion at 10-21. They also assert that the Eleventh Amendment bars Martin's claims for monetary damages against them in their official capacities, see id. at 21-22, and that they are entitled to qualified immunity, see id. at 22-24. Additionally, they state that Martin fails to state claims for negligence under Florida law or the Federal Tort Claims Act (FTCA). See id. at 24. In his Response, Martin contends that the video evidence shows that Defendants violated his Eighth Amendment right when they used excessive force. See Response (Doc. 134) at 4. Additionally, he maintains that he is entitled to summary judgment in his favor as to Defendants' liability, see P. Motion at 1, and that his claims for damages against Defendants "must be determined at trial," Brief (Doc. 123) at 9.

## V. Law

## A. Excessive Use of Force

With respect to the appropriate analysis in an excessive use of force case, the Eleventh Circuit has explained.

> [O]ur core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or

7

maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]. . ." <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations omitted).

<u>McKinney v. Sheriff</u>, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). When considering these factors, courts "must also give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533 (11th Cir. 1990)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Id.</u> at 9 (citation omitted). Notably, a lack of serious injury is relevant to the inquiry. See <u>Smith v. Sec'y</u>,

Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam) (quoting

Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam)). The United States

Supreme Court has explained:

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid.[6] (quoting Whitley,[7] supra, at 321, 106 S.Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. . . . An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id., at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).[8]
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Wilkins, 559 U.S. at 37-38.

---

[6] Hudson, 503 U.S. at 7.

[7] Whitley v. Albers, 475 U.S. 312 (1986).

[8] See Johnson, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

## B. Qualified Immunity

The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his

authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017). The Court also has

instructed:

Because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation," Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), each defendant is entitled to an independent qualified immunity analysis as it relates to his or her actions and omissions. So[,] we must be careful to evaluate a given defendant's qualified immunity claim, considering only the actions

11

and omissions in which that particular defendant engaged.

Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).

## VI. Analysis[9]

## A. Eighth Amendment Claims

Martin asserts that Defendants Horne and Mobley violated his Eighth Amendment right when they used excessive force against him on August 29, 2016. Defendants contend that they are entitled to summary judgment as to Martin's Eighth Amendment claims against them. They argue that Martin "cannot demonstrate a 42 U.S.C. § 1983 claim because no reasonable jury could believe [Martin]'s allegations…." Motion at 10. They also assert that the material facts are not in dispute because Martin admits in his deposition that he refused to enter the cell, stepped back away from the cell, braced his body against the door frame to physically resist entering the cell, used his foot to forego entering the cell, and ignored Horne's verbal commands. See id. at 13. Additionally, they maintain that the video evidence "confirms that [Martin] violently struggled against officers in front of the cell" and contradicted Horne's lawful commands. Id. at 14 (citing Def. Ex. I, camera 4 at 19:04:35-19:07). In

---

[9] For purposes of summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. Thus, the facts described in the Court's analysis may differ from those that ultimately can be proved.

support of their position, Defendants submitted exhibits, including incident reports, Docs. 120-1 through 120-5; Martin's medical records, Doc. 120-6; the Declaration of Kellie Caswell, RN, BSN (Caswell Decl.), Doc. 120-7; and Martin's deposition (P. Depo), Doc. 120-8. With the Court's permission, <u>see</u> Order (Doc. 130), Defendants also submitted two digital video discs under seal. <u>See</u> Notice to Court (Doc. 133); Doc. S-132, Def. Exs. I, cameras 4, 5, 6 (fixed wing recordings); J (handheld recording).

In an incident report, Defendant Horne described the circumstances related to the incident involving Martin. He stated in pertinent part:

> On August 29, 2016 at approximately 7:05 PM, while assigned as H-Dormitory Housing Officer, Officer William R. Schneier and I escorted Inmate MARTIN, Thaddeus DC#M85852 to cell H-2214 where Inmate BLACK, Jonathan DC#X47686 was present. Inmate BLACK was placed in hand restraints and ordered to step to the back of the cell to which Inmate BLACK complied. Inmate MARTIN was placed in the cell at which time Inmate MARTIN braced himself against the door frame and utilized his foot to prevent me from securing the cell. I ordered Inmate MARTIN to remove himself from the door frame and allow the cell door to be secured. Inmate MARTIN became argumentative and belligerent in reference to his disapproval of his cellmate. I implemented the Incident Command System advising of the aforementioned incident. I ordered Inmate MARTIN to cease his physical resistance to which he refused by lunging towards me in an aggressive manner, while utilizing his lower extremities to attempt to strike me in my lower torso, and lower extremities, while attempting to break from my grasp. As a result of Inmate MARTIN's aggressive

combative actions, and physical resistance to multiple lawful commands, I retrieved my assigned MK-4 OC chemical agent canister #16-25 and administered one continuous burst of chemical agent, striking Inmate MARTIN['s] torso and facial area. Officer Schneier and I secured a hold to Inmate MARTIN's upper extremities and torso area as Inmate MARTIN lifted his feet, continuing his physical resistance, by falling chest first to [the] floor. When chest down on the floor Inmate MARTIN ceased his combative behavior but continued his physical resistance by refusing to stand when ordered to do so. Officers Perry Mobley and Zachary Smith responded and assisted by obtaining a hold to inmate MARTIN['s] upper extremities in order to escort inmate MARTIN to the decontamination shower. Inmate MARTIN reluctantly complied with orders given by the responding officers and was assisted to a standing position, however during the escort from cell H-2214 to the decontamination shower inmate MARTIN lifted his feet from the floor multiple times and was held in a standing position briefly by the escorting officers until inmate MARTIN placed his feet back on the floor[] and resumed walking. Inmate MARTIN was ultimately placed in the decontamination shower and all forced ceased. I am certified in the use of chemical agents as indicated on my firearms card.

Doc. 120-1. Officer William R. Schneier provided a similar account of what transpired that night. See Doc. 120-2.

According to Horne and Schneier, Officers Perry Mobley and Zachary Smith responded to the incident and assisted by obtaining a custodial hold on Martin's upper extremities to escort him to the decontamination shower. See Docs. 120-1; 120-2. In an incident report, Defendant Mobley describes his role

during the events that transpired when he arrived at the scene that night. He

stated in pertinent part:

> On August 29, 2016 at approximately 7:07 PM, while assigned as H-Dormitory Housing Officer, I responded to an ICS (Incident Command System) incident initiated by Officer Sam Horne. I arrived to the Cell Front of Cell H2214 and assisted Officer Horne by securing a hold to Inmate MARTIN, Thaddeus DC#M85852's upper extremities and ordered inmate MARTIN to assume a standing position in order to be escorted to the Wing Two (02) decontamination shower. Inmate MARTIN reluctantly complied with orders given, and with the assistance of responding Officer Zachary Smith I escorted inmate MARTIN from cell H-2214 to the Decontamination Shower. During this escort inmate MARTIN lifted his feet from the floor multiple times and it became necessary to assist inmate MARTIN in maintaining a standing position until he complied with orders given and resumed walking unaided. Inmate MARTIN was placed in the decontamination shower without further incident and all force ceased by me.

Doc. 120-3. Officers Zachary Smith and Wayne A. Haley provided similar

narratives of the incident. See Docs. 120-4; 120-5.

To defeat the Motion, Martin is required to present evidence to show that

there is a genuine issue for trial. In opposing Defendants' Motion, Martin

asserts that the video evidence "clearly shows" that Horne excessively sprayed

him with chemical agents, choked him, and punched him with a closed fist. See

Response (Doc. 134) at 4-5 (citing Def. Ex. I, camera 4 at 19:04-19:06).

Additionally, Martin maintains that he is entitled to summary judgment in his

15

favor as to Defendants' liability. <u>See</u> P. Motion at 1. He argues that the video footage neither showed him lunging at the guards nor attempting to kick them. <u>See</u> Statement of Undisputed Facts (Doc. 124) at 2. In a Declaration, Martin provides a factual account that is similar to the allegations in his SAC. He states:

> I never rec[ei]ved any disciplinary report or action on 8-29-2016 at all because I was not at fault and I was the victim.
>
> . . . .
>
> Video footage shows me stepping backwards away from guards, all while fully secured with hand[]cuff[]s behind [my] back, s[h]ackles on [my] feet, and holding all my property in my hands before Defendant Horn[e] start[ed] to cho[]k[e] me, punch me, and physically forc[e] [me] into an un[]assigned cell with an occupant already in there that we did not match up. Due to me being Administrative Confinement Status and inmate Black[] being Disciplinary Confinement Status these prison guards could not put me in that cell. You can clearly hear me say I cannot go in there please let me speak to your "Captain" and before I knew what was going on Defendant Horn[e] said "you can't speak to nobody and get your a** in this cell" as he cho[]ked me, punched me, and sprayed me over and over with chemical agen[t]s in my eyes, nose[], ears, [and] mouth as I pled for him to stop[.] I can't breathe. I told Defendant Horn[e] I have as[t]hma and seizures while he continued to spray chemical[]s inside my mouth. Video footage showed Defendant Horn[e] and Defendant Mobley throw me on [the] ground all while still fully secured with handcuffs behind [my] back and s[h]ackles on [my] feet after already be[ing] sprayed with chemical agen[t]s. As I am on [the] ground video

16

> footage showed Defendant Horn[e] and Defendant
> Mobley jumping on me and continue attacking me on
> [the] ground and continue to spray me with
> chemical[]s. Video showed Defendant Horn[e] get up
> and stand straight up to look around to see who is
> watching him abuse me as all of the prisoners began
> to scream at him, c[u]rse at him, and kicking doors to
> alert staff about Defendant[']s abuse. Defendant
> Horn[e] stood up[,] look[ed] around[,] took few steps
> away[,] look[ed] around again[,] then came right back
> and jumped on me again and finish[ed] emptying the
> "gas can" filled with chemical agen[t]s. Please review
> 8-29-16 video.

P. Decl. at 1-3. At his deposition, Martin similarly stated that Defendant Horne

used excessive force when Martin refused to enter the cell. See P. Depo at 40-

52.

The parties agree that the video evidence captures the August 29, 2016

incident, the post-use-of-force decontamination shower, and Nurse Booth's

medical assessment.[10] However, they disagree as to what the recordings show

---

[10] Defendants' exhibit I contains three video recordings from fixed wing cameras 4, 5, and 6. Camera 4 provides a distant view from the opposite side of the dormitory's cell block. Camera 5 does not record the use of force at issue. It only shows Martin entering the wing, see Def. Ex. I at 19:02:39-19:02:54, exiting the wing, see id. at 19:28:43 and re-entering the wing after a visit to the medical clinic, see id. at 19:34:31. The closest camera to cell H-2214 is camera 6, but it does not point directly at the cell (which is located to the left of the camera angle), and therefore does not capture the details of Defendants' involvement. Defendants' exhibit J is a handheld video recording of Martin's decontamination shower and medical visit with Nurse Albert Booth. Notably, the audio is unclear due to cellblock echoes, and therefore the Court is unable to identify relevant voices and the substance of conversations. However, the audio does record inmates kicking their doors and yelling during the incident. In referencing each recording, the Court will use the time stamp in the top left corner of the recording.

with regard to how the cell-front incident unfolded. Both generally cite to camera 4's footage (19:04 through 19:07) and argue that the video evidence supports their factual accounts. <u>See</u> Motion at 6-7, 14; P. Decl. at 5 (citing Doc. 88); Doc. 88 at 4.

The Court first addresses Defendant Mobley's involvement in the incident. That night, Mobley responded (with Officer Smith) to Horne's call for assistance via the Incident Command System and helped Horne and Officer Schneier secure Martin. <u>See</u> P. Depo at 53; <u>see</u> <u>also</u> Docs. 120-1 through 120-5. At his deposition, Martin downplayed Mobley's involvement, stating that "Mobley really wasn't trying to get involved in the incident." P. Depo at 45. Martin testified that Mobley "basically" kept him on the ground to secure him. <u>Id.</u> at 53. He explained that "Mobley was just helping his fellow officer" and "trying to address or resolve or rectify the matter" when Martin was on the ground. <u>Id.</u> at 53; <u>see</u> <u>id.</u> at 45, 52, 54. According to Martin, Mobley never sprayed him with chemical agents or punched, hit, or kicked him. <u>See</u> <u>id.</u> at 45, 49, 51-54. The video evidence supports Defendant Mobley's account that he was not involved in the initial escort of Martin to cell H-2214, but escorted Martin from that cell to the decontamination shower without any excessive force used against Martin. <u>See</u> Def. Ex. I, camera 4 at 19:07:31-19:08:13; camera 6 at 19:07:31-19:07:50; <u>see</u> <u>also</u> Docs. 120-3; 120-4. Given the video

18

evidence and Martin's assertions at his deposition, Defendants' Motion is due to be granted as to Martin's Eighth Amendment claim against Defendant Mobley. Additionally, Plaintiff's Motion is due to be denied as to his Eighth Amendment claim against Defendant Mobley.

Next, the Court turns to Defendant Horne's involvement in the application of chemical agents and use of force against Martin. Horne asserts that he is entitled to summary judgment as to Martin's Eighth Amendment claims against him because he did not use any unnecessary force against Martin. He maintains that the video evidence supports his version of the facts. Martin argues that Horne is not entitled to summary judgment in his favor, and that the video evidence supports his (Martin's) version of the facts. As such, Martin asserts that he is entitled to summary judgment in his favor.

Camera 4's footage captures the rapidly-evolving scuffle but distorts the specific movements of the involved parties. Notably, the Court used a zoom feature[11] to magnify the small-scaled recorded incident (due to camera 4's location at the opposite corner of the cell block). However, it blurred the recording. Additionally, the walkway railings as well as assisting officers obstruct the view of Martin's and Horne's movements. Undoubtedly, there was a physical confrontation at the cell front. Nevertheless, the distant camera 4

---

[11] See Response (Doc. 134) at 11.

produced a grainy recording that is not determinative of how the incident unfolded. Camera 6's recording does not capture Horne's actions due to the camera's angled view. The recording merely shows an unidentified officer's lower legs and some quick movements on his part, but the recording is not determinative of Horne's involvement.

While the video evidence provides a detailed chronology of how the events unfolded, it fails to capture Horne's and Martin's interactions with each other at the front of cell H-2214. Given the differences in Martin's sworn recollection [12] and the contemporaneous narratives provided in incident reports coupled with Martin's medical records and Caswell's Declaration, [13] there remain genuine issues of material fact as to whether Horne appropriately used chemical agents and force to gain control of Martin, <u>or</u> used force that was excessive, causing Martin's lasting injuries. As such, Defendants' Motion as to Martin's Eighth Amendment claim against Defendant Horne is due to be denied. For the same reasons, Plaintiff's request that the Court enter summary judgment in his favor as to his claim against Horne is due to be denied.

---

[12] <u>See</u> SAC at 5-6; P. Decl.; Def. Ex. J (recording Martin's statement that the back of his head was burning); <u>see</u> <u>also</u> <u>generally</u> P. Depo.

[13] <u>See</u> Docs. 120-1 through 120-6; Caswell Decl. at 2 ¶10 (stating the post-use-of-force medical assessment documented "no gross deformity, and no signs or symptoms of injury noted"); Def. Ex. J (recording Martin's stance, gait, and movements during the decontamination shower, escort, and medical assessment).

## B. Qualified Immunity

Defendants assert that they are entitled to qualified immunity because they did not commit any federal statutory or constitutional violation. See Motion at 22-24. Under the doctrine of qualified immunity, a defendant may be protected from claims for monetary damages against him in his individual capacity. Here, it is undisputed that Defendants were engaged in discretionary functions during the events at issue. Thus, to defeat qualified immunity with respect to each Defendant, Martin must show both that the specific Defendant committed a constitutional violation, and that the constitutional right violated was clearly established at the time. Indeed, the Eleventh Circuit has instructed that, in determining the applicability of qualified immunity, the Court must "parse" the actions each Defendant undertook, and "address the evidence as it pertains solely to" that defendant. Alcocer, 906 F.3d at 952.

Upon review of the record and the parties' arguments, the Court finds that Defendant Mobley is entitled to qualified immunity from monetary damages in his individual capacity as to Martin's Eighth Amendment claim against him. However, at this summary judgment stage of the proceedings, genuine issues of material fact preclude a finding that Defendant Horne is entitled to the benefit of qualified immunity as to Martin's Eighth Amendment

claim against him. As such, Defendants' Motion as to their assertion of qualified immunity is due to be granted in part and denied in part.

### C. Eleventh Amendment[14]

Defendant Horne asserts that, to the extent he is sued in his official capacity, he is entitled to Eleventh Amendment immunity. See Motion at 21-22.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) (per curiam).

---

[14] The Court need not address Defendant Mobley's assertion that the Eleventh Amendment bars Martin's claim for monetary damages against him in his official capacity.

In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble</u>,[15] 779 F.2d at 1513-20.

Accordingly, in <u>Zatler</u>, the court found that the Florida Department of Corrections Secretary was immune from suit in his official capacity. <u>Id.</u> Thus, insofar as Martin may be seeking monetary damages from Defendant Horne in his official capacity, the Eleventh Amendment bars suit. Therefore, Defendants' Motion is due to be granted to the extent that Horne is entitled to the entry of judgment in his favor on Martin's claim for monetary damages from Defendant Horne in his official capacity.

## D. FTCA and Negligence Claims

In the SAC, Martin also asserts that Defendants owed him "a duty of care" under Florida law and the FTCA. <u>See</u> SAC at 7. Defendants maintain that Martin fails to state plausible negligence claims under Florida law and

---

[15] <u>Gamble v. Fla. Dep't of Health & Rehab. Serv.</u>, 779 F.2d 1509 (11th Cir. 1986).

the FTCA. Upon review of Martin's Response, it appears that he intends to pursue his claims against Defendants under federal constitutional provisions, specifically the Eighth Amendment. See generally Response; P. Motion. To the extent Martin intends to advance an FTCA claim, the United States is the only permissible defendant in an FTCA action. Simpson v. Holder, 184 F. App'x 904, 908 (11th Cir. 2006); see 28 U.S.C. § 2679(b)(1) (stating that the FTCA remedy against the United States "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim"). In Levin v. United States, the Supreme Court explained that the FTCA "gives federal district courts exclusive jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of federal employees acting within the scope of their employment." 568 U.S. 503, 506 (2013). "Substantively, the FTCA makes the United States liable to the same extent as a private individual under like circumstances, under the law of the place where the tort occurred, subject to enumerated exceptions." Id. at 506-07. However, a state employee is not a proper defendant in a FTCA case. See Daniel v. United States Marshal Serv., 188 F. App'x 954, 956 (11th Cir. 2006) ("[T]he United States [is] the only proper defendant, pursuant to the FTCA."). Additionally, the law is well-settled that the Constitution is not

implicated by the negligent acts of corrections officials. <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in <u>Daniels</u>, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). As such, judgment is due to be entered in favor of Defendants as to Martin's FTCA and negligence claims.

### E. Plaintiff's Newly Asserted Claims

In his Motion (Doc. 122) and Response (Doc. 134), Martin asserts that Defendants violated his rights under the Fourth Amendment as well as his equal protection and due process rights under the Fourteenth Amendment. Additionally, he maintains that he was denied medical care. Insofar as Martin asserts Fourth, Eighth (deliberate indifference to his medical needs), and Fourteenth Amendment claims against Defendants in his response to Defendants' summary judgment motion, the Court determines that raising new legal claims against Defendants for the first time at this stage of the litigation is impermissible. <u>See</u> <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) ("The central issue in this case is whether a non-moving party plaintiff may raise a new legal claim for the first time in response to the opposing party's summary judgment motion. We hold it cannot."). Thus, the Court determines that Martin is not permitted to pursue his claims under

the Fourth and Fourteenth Amendments against Defendants in this case.[16]

Neither is Martin permitted to pursue Eighth Amendment claims (deliberate

indifference to his medical needs) against Defendants in this litigation.[17]

In consideration of the foregoing, it is now

**ORDERED**:

1.      Defendants' Motion for Summary Judgment (Doc. 120) is

**GRANTED** as to (1) Plaintiff's Eighth Amendment claim against Defendant

Mobley; (2) Defendant Mobley's assertion of qualified immunity as to Martin's

Eighth Amendment claim against him; (3) Plaintiff's claim for monetary

damages against Defendant Horne in his official capacity; and (4) Plaintiff's

FTCA and state-law negligence claims. Otherwise, the Motion is **DENIED.**

---

[16] The Eleventh Circuit has instructed that "under the Supreme Court's current framework, the Fourth Amendment covers arrestees, **the Eighth Amendment covers prisoners**, and the Fourteenth Amendment covers 'those who exist in the in-between—pretrial detainees.'" Crocker v. Beatty, 995 F.3d 1232, 1246 (11th Cir. 2021) (quoting Piazza v. Jefferson Cnty., 923 F.3d 947, 952 (11th Cir. 2019)) (emphasis added).

[17] To the extent Martin blames medical staff for the denial of treatment and/or for the failure to document his injuries, see Doc. 143, he may initiate a new civil rights action if he elects to do so. Insofar as Martin maintains that Defendants were deliberately indifferent to his medical needs, the video evidence shows that Mobley promptly escorted Martin to a decontamination shower, and that Martin was taken to the clinic where Nurse Booth assessed Martin's health. See Def. Ex. J; see also Caswell Decl. at 3 ¶11 ("There is no documentation in the medical records provided that Mr. Martin has been diagnosed with asthma and he has not been prescribed medications that are typically prescribed for asthma.").

Judgment in Mobley's favor will be withheld pending adjudication of the action as a whole. <u>See</u> Fed. R. Civ. P. 54.

     2.    Plaintiff's Motion for Summary Judgment (Doc. 122) is **DENIED**.

     3.    The parties must confer in good faith to discuss the issues and the possibility of settlement as to Martin's remaining Eighth Amendment claim for excessive use of force against Defendant Horne. **No later than October 13, 2021**, the parties must notify the Court whether they are able to reach a settlement. If the parties are unable to settle the case privately among themselves, they must notify the Court if they wish to have the case referred to a United States Magistrate Judge for a settlement conference. Otherwise, the Court will enter a case management order, set a trial date, and direct the parties to begin trial preparations.

     **DONE AND ORDERED** at Jacksonville, Florida, this 30th day of August, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-1 8/30
c:
Thaddeus Chaylon Martin #M85852
Counsel of Record